UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
JORDAN S., a minor, by and through
his parents and next friends, Suzanne
and Jeffrey S.,

                    MEMORANDUM AND ORDER

          Plaintiffs,          CV 08-1446

          -against-          (Wexler, J.)

HEWLETT WOODMERE UNION
FREE SCHOOL DISTRICT,

          Defendants.
----------------------------------------------X
APPEARANCES:

    LAW OFFICE OF MICHELE KULE-KORGOOD
    BY: MICHELE KULE-KORGOOD, ESQ.
    Attorneys for Plaintiffs
    98-20 Metropolitan Avenue
    Forest Hills, New York 11375

    KAYE SCHOLER LLP
    BY: NAVIN K. PANT, ESQ.
    Attorneys for Plaintiffs
    425 Park Avenue
    New York, New York 10022-3598

    INGERMAN, SMITH, LLP
    BY: JOSEPH E. MADSEN, ESQ.
        SUSAN M. GIBSON, ESQ.
    Attorneys for Defendant
    150 Motor Parkway
    Hauppauge, New York 11788

WEXLER, District Judge

    This is an action commenced pursuant to the Individuals with Disabilities Education Act,

20 U.S.C. §1415 (the "IDEA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794

1

and Article 89 of the New York State Education Law. All claims allege that the Defendant Hewlett-Woodmere School District (the "District") failed to provide the minor Plaintiff with a free appropriate pubic education as required by the statutes cited above. As a result of this alleged failure, the minor Plaintiff's parents enrolled their child in a school of their own choice, which school is not approved by the New York State Department of Education. In this action, Plaintiffs seek reimbursement of the private school tuition paid to the private school during the 2006-2007 school year, as well as the costs of related services provided during that same school year.

Prior to commencement of this action, administrative hearings were held before an independent hearing officer (the "IHO") to determine the propriety of the District's actions and whether Plaintiffs were entitled to the same reimbursements they seek here. The IHO held that Plaintiffs were not entitled to the reimbursements sought, and Plaintiffs appealed that decision to the New York State Education Department. The State Review Officer ("SRO"), citing different reasons, upheld the denial of reimbursement. This action followed.

The parties agree that this case can be decided in the context of cross-motions for summary judgment. Those motions and the administrative record upon which they are based, are presently before the court. For the reasons that follow, the District's motion is granted, and the Plaintiffs' motion is denied.

## BACKGROUND

I.  Factual Background: The Parties

The facts recited below are drawn from the extensive administrative record that is before the court, and upon which the parties agree. Plaintiff Jordan S. ("the Minor Plaintiff")

2

is a child with autism. Suzanne and Jeffrey S. are the parents of the Minor Plaintiff (collectively "Plaintiffs" or the "Parents"), and properly prosecute this matter on behalf of their child. The Defendant District is the school district in which Plaintiffs live.

II.     The Minor Plaintiff's Placement History

   A.    Placement Prior to 2006

The Minor Plaintiff was first diagnosed as a child with autism prior to the age of three. With the exception of the 2005-2006 school year, the year prior to the placement that is the subject of this action, the Minor Plaintiff either attended a New York State approved private school, or was home-schooled. During the 2005-2006 school year, the Minor Plaintiff attended a private school for which reimbursement is not sought. During that school year, the Minor Plaintiff was evaluated by the District, and received extensive special education services as a result of those evaluations. Such evaluations included occupational therapy ("OT"), speech and language therapy, educational and psychological evaluations. Additionally, the District school psychologist visited and observed the Minor Plaintiff.

   B.    The 2006 IEP

Towards the end of the 2005-2006 school year, the District scheduled a meeting of the Committee on Special Education ("CSE") to determine the Minor Plaintiff's placement, and to arrive at an Individualized Educational Plan ("IEP") for the school year commencing in September of 2006. The CSE meeting was held on June 21, 2006. Participating in that meeting were the District's Director of Special Education, the school psychologist who evaluated the Minor Plaintiff, the speech therapist who conducted the Minor Plaintiff's speech language evaluations, the District's transition coordinator, the Minor Plaintiff's mother, and a parent

3

member. Participating by telephone were the educational director from the Minor Plaintiff's 2005 private school, that school's speech-language and occupational therapists, and the assistant principle of the Board of Cooperative Educational Services Rosemary Kennedy School ("BOCES-RK") located within the District.

As a result of the 2006 IEP meeting, the School District developed an IEP for the 2006-2007 school year (the "2006 IEP"). The 2006 IEP recommended that the Minor Plaintiff be placed in a small full day special education class located at BOCES-RK, which is, as noted, located within the District. It was recommended that the Minor Plaintiff be provided with various therapies and assistive technologies including a one to one aide, as well as occupational therapy and individual speech language therapy. The 2006 IEP declined to provide for behavioral interventions, noting that none were needed. Plaintiffs were advised of the 2006 IEP, and were also told that the District could not recommend the private school placement they sought because the desired placement was not a state-approved school.

C. The Parents' Rejection of the 2006 IEP

Plaintiffs advised the School District that they rejected the 2006 IEP and its recommended BOCES-RK placement, and that the Minor Plaintiff would be attending Kulanu Torah Academy ("Kulanu") for the 2006 school year. The School District was further advised that Plaintiffs would seek administrative review of the School District's placement decision.

In November of 2006, Plaintiffs requested an impartial hearing seeking reimbursement for tuition paid and certain other educational services provided to the Minor Plaintiff at Kulanu. Plaintiffs took issue with the 2006 IEP, arguing that it failed to provide the Minor Plaintiff with a free appropriate public education. In support of their claim for review, the Parents objected to

4

the 2006 IEP on the grounds that:

- the CSE was not validly composed because it failed to include a regular education teacher;

- the CSE improperly failed to advise the Parents that a BOCES representative would be participating in the meeting;

- the CSE recommendation was pre-determined;

- the school district evaluations of the Minor Plaintiff were insufficient and inappropriate;

- the services recommended in the 2006 IEP were inconsistent with the CSE meeting discussions;

- the assistive technology recommended was inappropriate, and

- the goals and objectives were insufficient and did not address the needs of the Minor Plaintiff.

III. Administrative Hearings and Decisions

   A. Hearings and the Decision of the IHO

Hearings were held before the IHO on six separate occasions between April and June of 2007. On August 29, 2007, the IHO issued a nineteen page detailed decision denying the claim for reimbursement. The IHO's decision acknowledged that under certain circumstances an order of reimbursement for private educational expenses is appropriate. Specifically, such reimbursement was noted to be proper if the services offered by the school district are not appropriate, those obtained by the parents are, and equity supports such an order. In support of their claim that the 2006 IEP recommendation was inappropriate, the Plaintiffs argued that the BOCES program was overly restrictive largely because, as a completely self-contained school, it

5

did not provide access to typically developing peers, and did not allow the Minor Plaintiff access to the general curriculum. The IHO agreed with the Plaintiffs on this issue, and therefore held that the 2006 IEP was inappropriate. While the IHO agreed with the Plaintiffs as to this initial prong of the required analysis, he disagreed with Plaintiffs' position regarding the necessity of conducting a functional behavioral assessment or development of a behavior intervention plan. The IHO also rejected arguments regarding certain procedural flaws identified by Plaintiffs in the School District procedures, including arguments regarding the identity of those who attended the relevant CSE meeting, and, specifically, the failure to include a general education teacher at that meeting. Having held, however, that the Plaintiffs met their burden of persuasion with respect to showing that School District recommendation was inappropriate, the IHO went on to consider whether Plaintiffs met the burden of showing that the Plaintiffs' placement was appropriate. Upon such consideration, the IHO held that the Plaintiffs did not demonstrate that the Minor Plaintiff possessed cognitive capabilities to support his placement at Kulanu. This finding led to a rejection of the claim for reimbursement.

B. Decision of the SRO

Both parties appealed the decision of the IHO to the State Education Department. The District appealed the decision with respect to the appropriateness of the 2006 IEP, and the Plaintiffs appealed the decision with respect to the appropriateness of the Plaintiffs' placement at Kulanu. The State Review Officer ("SRO") rendered a decision on December 10, 2007. The decision of the SRO, like that of the IHO, recognizes that there exist circumstances under which reimbursement of private tuition expenses is appropriate. Like the IHO, the SRO noted that such circumstances exist where a school district placement recommendation is inappropriate, the

parents have placed the child properly, and the equities favor reimbursement.

As an initial matter, the SRO rejected the argument that the alleged procedural irregularities either impeded the Minor Plaintiff's right to a free appropriate public education or the right of the Parents' to participate in the decision-making process. As to the merits, the SRO disagreed with the IHO's conclusion regarding the appropriate nature of the 2006 IEP. Specifically, the SRO held that the 2006 IEP recommended a program and placement that was appropriate because it was, as required by law, reasonably calculated to confer educational benefit on the student. The SRO rejected the argument that the BOCES-RK placement was inappropriate because it did not represent the least restrictive educational environment for the Minor Plaintiff. Having found that the District's placement was appropriate, the SRO denied Plaintiffs' request for reimbursement of tuition and other services, and held it was unnecessary to consider whether or not placement at Kulanu was appropriate. This lawsuit followed.

IV. The Motions

As noted, the parties cross move for summary judgment. There is no issue as to the Minor Plaintiff's diagnosis as a child with autism. Nor is there any issue as to his eligibility to receive special education services based upon this classification. At issue is whether the 2006 IEP set forth an appropriate services plan for the Minor Plaintiff with regard to the 2006-2007 school year. Plaintiffs argue that it did not, and that they were therefore authorized to make a unilateral decision as to the placement of the Minor Plaintiff, and seek reimbursement for such placement and services provided. The District argues, on the other hand, that the 2006 IEP placement and services plan was entirely appropriate and oppose reimbursement. Acceptance of the District's position would obviate the need to consider whether the Parents' placement

decision was appropriate. After discussing the relevant standard of review, the court will decide the merits of the motion.

## DISCUSSION

I.   IDEA: Statutory Scheme

The IDEA ensures that all children are provided a "free appropriate public education . . . and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d). A "free and appropriate" education is one that benefits a child's particular educational needs with a program specifically tailored to that child. Board of Educ. of Hendrick Hudson Cent. School District v. Rowley, 458 U.S. 176, 181-82 (1982). The IDEA recognizes the importance of educating children in the least restrictive educational environment. Thus, the statute requires that "to the maximum extent appropriate," disabled children should be "educated with children who are not disabled." 20 U.S.C. §1412(a)(5)(A). Separate education of disabled children is recommended to occur "only when the nature or severity of a child's disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. §1412(a)(5)(A).

A "Local Education Agency," in the case of New York State, the CSE, is charged with the responsibility of developing an IEP for children receiving services under the IDEA. 20 U.S.C. § 1414(d)(2)(A) (charging local education agencies with responsibility of developing IEP for each disabled child); N.Y. Educ. L. § 4402(1)(b)(1) (CSE responsibilities in development of IEP).

The IEP is a written document containing, <u>inter alia</u>, goals and instructional objectives, services to be provided, projections regarding the dates when such services will be offered and

criteria for evaluating whether instructional objectives are being met. Rowley, 458 U.S. at 182; see 20 U.S.C. §1414(d)(1)(A). The IDEA recognizes the importance of parent involvement in the development of a student's IEP. Thus, the statute incorporates procedural safeguards aimed at giving parents a meaningful opportunity to help formulate and, if necessary, object, to a school district's decision regarding their child's education. For example, parents are invited to attended the district's CSE meeting, as members of an "IEP Team" to participate in development of their child's IEP. See 20 U.S.C. §1414(d)(1)(B). Parent objections to an IEP may be heard at an "impartial due process hearing" 20 U.S.C. §1415(f), and, ultimately, in either state or federal court. 20 U.S.C. §1415(i)(2).

## II. Review of Administrative Findings

In the context of an appeal of an administrative decision under the IDEA, the summary judgment process "involves more than looking into disputed issues of fact; rather, it is a 'pragmatic procedural mechanism' for reviewing administrative decisions." A.C. ex rel. M.C. v. Board of Educ. of The Chappaqua Central School Dist., 553 F.3d 165, 171 (2d Cir. 2009). The court's role when undertaking such review is "circumscribed," and it is required to afford "due weight to [the administrative] proceedings, mindful that the judiciary generally 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" Id. (citations omitted). This standard of review recognizes the fact that federal courts are not to "substitute their own notions of sound educational policy for those of the school authorities which they review." Id., quoting, Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist v. Rowley, 458 U.S. 176, 206 (1982); see also Cerra v. Pawling Cent. School Dist., 427 F.3d 186, 191 (2d Cir. 2005) (IDEA requires "substantial deference to state administrative bodies

on matters of educational policy"). Where, as here, the decision of the SRO disagrees with that of the IHO, it is the decision of the SRO – the final decision of the state – that is afforded the most deference. See A.C., 553 F.3d at 173.

III. Standard for Parent Reimbursement for Unilateral Placement

Parents who believe that their child's IEP does not afford the appropriate education to which the child is entitled, may "at their own financial risk, enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state." Gagliardo v. Arlington Central School Dist., 489 F.3d 105, 111 (2d Cir. 2007); see School Committee of Town of Burlington, Mass. v. Department of Educ. of Commonwealth of Massachusetts, 471 U.S. 359, 370 (1985). Parents seeking reimbursement bear the burden of showing that the school district's suggested placement was inappropriate, and that their placement was appropriate. Gagliardo, 489 F.3d at 111; Frank G. v. Board of Educ. of Hyde Park, 459 F.3d 356, 364-65 (2d Cir. 2006). When deciding reimbursement cases, courts employ a three step analysis. First, the court determines whether there has been procedural compliance with the IDEA. Second, the court considers whether the challenged IEP is appropriate to meet the educational needs of the child, i.e., whether the IEP plan is "reasonably calculated to enable the child to receive educational benefits." A.C., 553 F.3d at 171, quoting, Rowley, 458 U.S. at 206-07. It is only if the challenged IEP is "procedurally or substantively deficient," that the reviewing court must consider the final step of the analysis, i.e., whether the parents' unilateral placement is appropriate within the meaning of the IDEA. Id. As noted, the issue of "appropriateness," whether considering the challenged IEP or the parents' placement, centers on whether the placement plan at issue is one that is "reasonably calculated to enable the child to receive

10

educational benefits." Rowley, 458 U.S. at 207.

IV.  Disposition of the Motions

In accord with the analysis set forth above, the court considers first whether there has been procedural compliance with the IDEA. When considering this step, the court notes that not every procedural error results in a finding that the resulting IEP is deficient. Instead, the issue is whether any, or a combination of procedural violations renders the IEP placement inappropriate. A.C., 533 F.3d at 172. The court holds that Plaintiffs have identified no alleged procedural irregularity that meets this standard.

Turning to the second prong, the court considers whether the challenged IEP is substantively appropriate. The District will be held to have fulfilled its substantive IDEA obligations "if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." A.C., 553 F.3d at 173 (citation omitted). The court holds that the 2006 IEP fulfills these obligations. There was more than ample evidence before the CSE that the Minor Plaintiff would benefit from the recommended placement. The class recommended for the Minor Plaintiff was among the highest functioning classes in the school, where he could interact with peers of similar verbal and social skills. It was also demonstrated that the Minor Plaintiff would benefit from the structured program setting offered at the BOCES-RK school environment. Additionally, it is clear that the BOCES-RK placement did not violate the Minor Plaintiff's right to be educated in the least restrictive educational environment. Indeed, the evidence indicated that the Minor Plaintiff was highly dependent upon adults for interaction and had limited interest in peer socialization. Moreover, results of testing indicated that because of the nature and severity of the Minor

Plaintiff's disability, he would not benefit from a greater degree of mainstreaming than that provided for in the BOCES program. There was little evidence that the Minor Plaintiff could model the behavior of mainstreamed peers, and BOCES-RK did, indeed, provide opportunities for community interaction, such as community trips, from which the Minor Plaintiff could benefit. In sum, the court holds that the 2006 IEP was a plan that was "reasonably calculated to enable the child to receive educational benefits," and was therefore in substantive compliance with the IDEA.

In holding the 2006 IEP appropriate, the court considers the evidence that was before the IHO and the SRO, and rejects Plaintiffs' attempt to use the 2007 IEP placement as an admission by the District that the 2006 BOCES-RK placement was inappropriate. While it is true that the 2007 IEP did not recommend a BOCES placement, it is also true that this IEP recommended a school closer to Plaintiffs' home, and relied upon updated information about the Minor Plaintiff. That information included the CSE's concerns of the Minor Plaintiff's parents regarding the 2006 placement. It would be both unfair and inaccurate to construe the 2007 IEP as an admission against the District, or to rely on that later IEP to undercut the IEP at issue here. This is especially true in light of the fact that while the 2007 IEP placement afforded the possibility of mainstreaming, it was in no way guaranteed. Additionally, accepting Plaintiffs' position, and allowing placement decisions made after a challenged IEP to be held against a school district would provide a strong disincentive to changing IEP recommendations based upon new information and concerns. Any decision that discourages school districts from continually reassessing the needs of children is inconsistent with the requirements of the IDEA. The court therefore declines to consider the 2007 IEP placement recommendation as evidence that the 2006

IEP was inappropriate.

The court similarly declines to rely on Plaintiffs' proffered evidence of the Minor Plaintiff's alleged progress during his time at Kulanu as evidence that the BOCES-RK placement was inappropriate. Importantly, the evidence of the Minor Plaintiff's alleged progress while at Kulanu is anything but conclusive. In any event, this subsequent evidence is in no way inconsistent with the conclusion of the SRO and this court that the 2006 IEP was appropriate and afforded the Minor Plaintiff the public education to which he was entitled.

In view of the court's holding regarding the appropriate nature of the 2006 IEP, the court need not consider whether the Plaintiffs' unilateral placement decision was appropriate, and the request for reimbursement of tuition and other expenses incurred at the school attended by the Minor Plaintiff is denied.

## CONCLUSION

Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. The Clerk of the Court is directed to terminate the motions and to close the file in this case.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
December 1, 2010

13